| UNITED STATES DISTRICT COURT | EASTERN DISTRICT OF TEXAS |
|---|---|

| UNITED STATES OF AMERICA | § | |
|---|---|---|
| | § | |
| *versus* | § | CASE NO. 4:16-CR-120 (2) |
| | § | |
| JABRIEL WILLIAMS | § | |

## MEMORANDUM AND ORDER

Pending before the court is Defendant Jabriel Williams's ("Williams") *pro se* letter (#100), wherein he seeks a "time cut or home confinement" due to Coronavirus Disease 2019 ("COVID-19") pursuant to 34 U.S.C. § 60541(g). United States Pretrial and Probation Services ("Probation") recommends that the court deny the motion. Having considered the pending motion, the recommendation of Probation, the record, and the applicable law, the court is of the opinion that the motion should be DENIED.

I. Background

On March 30, 2017, Williams pleaded guilty to Count One, Conspiracy to Steal Firearms in violation of 18 U.S.C. § 371, and Count Three, Felon in Possession of a Firearm in violation of 18 U.S.C. §922(g)(1), of the Indictment. He was found to be responsible for stealing 26 firearms while burglarizing vehicles over the course of three months. On October 4, 2017, Williams was sentenced to 60 months' imprisonment as to Count One and 120 months' imprisonment as to Count Three, to run concurrently, followed by 3 years' supervised release with additional terms.

II.    <u>Analysis</u>

    A.    <u>Home Confinement</u>

Williams cites 34 U.S.C. § 60541(g) as the basis for his motion. Under that statute, the First Step Act of 2018 ("FSA") re-established and expanded a pilot program under the Second Chance Act to place elderly and terminally ill inmates in home confinement. Pursuant to the Elderly Offender Home Detention Program ("EOHDP"), the Attorney General "shall conduct a pilot program to determine the effectiveness of removing eligible elderly offenders and eligible terminally ill offenders from Federal Bureau of Prisons [("BOP")] facilities and placing such offenders on home detention until the expiration of the prison term to which the offender was sentenced." 34 U.S.C. § 60541(g)(1)(A). In addition, "the Attorney General may release some or all eligible elderly offenders and eligible terminally ill offenders from [BOP] facilities to home detention, upon written request from either the [BOP] or an eligible elderly offender or eligible terminally ill offender." *Id*. § 60541(g)(1)(B). In order to qualify for the pilot EOHDP, the elderly offender must, generally (1) be "not less than 60 years of age"; (2) be serving a term of imprisonment that is not life imprisonment based on a conviction for an offense that does not include any crime of violence, a sex offense, an offense under Chapter 37 of Title 18 (Espionage and Censorship), or have a history of such offenses; (3) have "served 2/3 of the term of imprisonment to which the offender was sentenced"; (4) "not escaped, or attempted to escape, from a [BOP] institution"; (5) save the BOP money through his home detention; and (6) receive a determination by the BOP that he will "be at no substantial risk of engaging in criminal conduct or of endangering any person or the public if released to home detention." *Id*. § 60541(g)(5)(A). An "eligible terminally ill offender" is one who meets the criteria listed in items (2) through (6)

above and who has been determined by a medical doctor approved by the BOP to be: "(I) in need of care at a nursing home, intermediate care facility, or assisted living facility . . . or (II) diagnosed with a terminal illness." *Id*. § 60541(g)(5)(D)(iii).

Here, Williams filed this motion under EOHDP without citing any authority, making a coherent argument, or offering proof of eligibility for home confinement. Additionally, according to his Presentence Report, Williams is 27 years old and has no history of serious or chronic illnesses or medical conditions. Moreover, Probation confirms that he is not in poor health at this time, stating that Williams is a Care Level 1 inmate, meaning he is healthy or requires very simple care (*e.g.*, minor medication). Probation also advises that Williams has a high recidivism score. He has served approximately 25% of his term of imprisonment and it is unknown whether he has escaped or attempted to escape from a BOP institution.

Notably absent from Williams's motion is any indication that the BOP has determined, "in [its] sole discretion," that Defendant does not have "a history of violence, or of engaging in conduct constituting a sex offense," that Defendant is "at no substantial risk of engaging in criminal conduct or of endangering any person or the public if released to home detention," or that Defendant's release to home detention "will result in a substantial net reduction of costs to the Federal Government," as required by § 60541(g)(5)(A). Williams's criminal history includes prior convictions for: Possession of Marijuana (3) (including possession in a drug free zone), Possession of Cocaine, and Attempt to Commit Burglary of a Building; moreover, two of the drug offenses were committed while he was at home. Consequently, Williams has not shown that he meets the criteria for early release to home confinement pursuant to the EOHDP.

B.     Compassionate Release

On December 21, 2018, the President signed the First Step Act of 2018 into law. *See* First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194. The Act, in part, amended 18 U.S.C. § 3582(c), which gives the court discretion, in certain circumstances, to reduce a defendant's term of imprisonment:

> The court, upon motion of the Director of the [BOP], or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that extraordinary and compelling reasons warrant such a reduction; or the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of [BOP] that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g); and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A)(i)-(ii). This provision is commonly referred to as "compassionate release."

Prior to the First Step Act, only the Director of the BOP could file a motion seeking compassionate release. *See Tuozzo v. Shartle*, No. 13-4897, 2014 WL 806450, at *2 (D.N.J. Feb. 27, 2014) (denying petitioner's motion for compassionate release because no motion for his release was filed by the BOP); *Slate v. United States*, No. 5:09-CV-00064, 2009 WL 1073640, at *3 (S.D.W.Va. Apr. 21, 2009) ("Absent a motion from the BOP, the Court lacks authority to grant compassionate release."). The First Step Act amended § 3582(c) by providing a defendant the means to appeal the BOP's decision not to file a motion for compassionate release on the

4

defendant's behalf. *United States v. Cantu*, No. 1:05-CR-458-1, 2019 WL 2498923, at *1 (S.D. Tex. June 17, 2019); *United States v. Bell*, No. 3:93-CR-302-M, 2019 WL 1531859, at *1 (N.D. Tex. Apr. 9, 2019). The plain language of the statute, however, makes it clear that a defendant must first exhaust his administrative remedies before seeking relief from the court. *United States v. Handerhan*, No. 1:10-CR-00298, 2019 WL 1437903, at *1 (M.D. Pa. Apr. 1, 2019) ("This section authorizes release after a movant has exhausted his administrative remedies if 'extraordinary and compelling reasons warrant such a reduction.'" (quoting 18 U.S.C. § 3582(c)(1)(A)(i))).

Here, it appears that Williams has not submitted any request to have his circumstances evaluated by the warden of the facility where he is housed. Hence, he has not exhausted his administrative remedies, and the court is without authority to "waive the full exhaustion of the administrative rights." *United States v. Collins*, No. CR 04-50170-04, 2020 WL 1929844, at *2 (W.D. La. Apr. 20, 2020) ("Section 3582(c)(1)(A) does not provide [the court] with the equitable authority to excuse [the defendant's] failure to exhaust his administrative remedies or to waive the 30-day waiting period."); *accord United States v. Garcia-Mora*, No. CR 18-00290-01, 2020 WL 2404912, at *2 (W.D. La. May 12, 2020); *see Ross v. Blake*, ___ U.S. ___, 136 S. Ct. 1850, 1857 (2016) ("[J]udge-made exhaustion doctrines . . . remain amenable to judge-made exceptions," whereas "mandatory exhaustion statutes . . . establish mandatory exhaustion regimes, foreclosing judicial discretion."). Accordingly, at this time, the court does not have authority to grant the relief Williams requests. Moreover, even if he had exhausted his administrative remedies, nothing in his one-sentence letter indicates that extraordinary and compelling reasons exist for his release from confinement.

Congress did not define "extraordinary and compelling." Rather, it elected to delegate its authority to the United States Sentencing Commission ("the Commission"). *See* 28 U.S.C. § 994(t) ("The Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples."); *see also* U.S. SENTENCING GUIDELINES MANUAL § 1B1.13 (U.S. SENTENCING COMM'N 2018) ("USSG"). In Application Note 1 to § 1B1.13 of the USSG, the Commission defined "extraordinary and compelling reasons" to include the following four categories of circumstances: (i) certain medical conditions of the defendant; (ii) the defendant is 65 years or older and meets other requirements; (iii) the defendant's family has specified needs for a caregiver; and (iv) other reasons in the defendant's case that establish an extraordinary and compelling reason. The policy statement regarding compassionate release also requires a determination that "the defendant is not a danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13(2). Williams does not contend that his case falls within any of the explicitly defined USSG categories of circumstances that may give rise to extraordinary and compelling reasons: medical condition, age, family circumstances, or other reasons.

Nevertheless, Williams requests either a "time cut or home confinement" due to the pandemic, which the court construes to mean COVID-19. Although Williams appears to have legitimate concerns regarding COVID-19, he does not establish that the BOP cannot manage the outbreak within his correctional facility or that the facility is specifically unable to treat him, if he were to contract the virus and develop COVID-19 symptoms, while incarcerated. *See United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society

and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread."); *United States v. Clark*, No. CR 17-85-SDD-RLB, 2020 WL 1557397, at *5 (M.D. La. Apr. 1, 2020) (finding the defendant had failed to present extraordinary and compelling reasons to modify his prison sentence because he "does not meet any of the criteria set forth by the statute" and he "cites no authority for the proposition that the fear of contracting a communicable disease warrants a sentence modification"); *United States v. Eberhart*, No. 13-CR-00313-PJH-1, 2020 WL 1450745, at *2 (N.D. Cal. Mar. 25, 2020) ("[A]s defendant does not assert that he is suffering from a medical condition as defined in U.S.S.G. § 1B1.13, a reduction of sentence due solely to concerns about the spread of COVID-19 is not consistent with the applicable policy statement of the Sentencing Commission as required by § 3582(c)(1)(A)."). Williams has failed to establish that he meets any of the statutory requirements or other reasons exist that would constitute extraordinary and compelling reasons to reduce his sentence to time served and warrant his release from imprisonment. Furthermore, the court cannot conclude that he would not pose a danger to any other person or to the community, if released.

Moreover, the BOP has instituted a comprehensive management approach that includes screening, testing, appropriate treatment, prevention, education, and infection control measures in response to COVID-19. In response to a directive from the United States Attorney General in March 2020, the BOP immediately began reviewing all inmates who have COVID-19 risk factors, as described by the Centers for Disease Control and Prevention, for the purpose of determining which inmates are suitable for placement on home confinement. *See Collins*, 2020

WL 1929844, at *3. The BOP notes that inmates need not apply to be considered for home confinement, as this is being done automatically by case management staff.

In his Memorandum to the BOP dated March 26, 2020, Attorney General Barr acknowledges that the Department of Justice ("DOJ") has an obligation to protect both BOP personnel and inmates. He also notes that the DOJ has the responsibility of protecting the public, meaning that "we cannot take any risk of transferring inmates to home confinement that will contribute to the spread of COVID-19 or put the public at risk in other ways." The Attorney General issued a subsequent Memorandum to the BOP on April 3, 2020, in which he emphasizes that police officers protecting the public face an increased risk from COVID-19 and cannot avoid exposure to the virus, with their numbers dwindling as officers who contract the virus become ill or die or need to recover or quarantine to avoid spreading the disease. Accordingly, he cautions:

> The last thing our massively over-burdened police forces need right now is the indiscriminate release of thousands of prisoners onto the streets without any verification that those prisoners will follow the laws when they are released, that they have a safe place to go where they will not be mingling with their old criminal associates, and that they will not return to their old ways as soon as they walk through the prison gates.

As the court noted in *United States v. Preston*, "[t]he best predictor of how [Defendant] will behave if he were to be released is how he behaved in the past, and his track record is a poor one." No. 3:18-CR-307-K, 2020 WL 1819888, at *4 (N.D. Tex. Apr. 11, 2020) (quoting *United States v. Martin*, No. PWG-19-140-13, 2020 WL 1274857, at *3 (D. Md. Mar. 17, 2020)). Here, Williams's track record is similarly a poor one.

In short, Defendant has failed to satisfy his burden of showing the necessary circumstances to warrant relief under the statutory framework to which the court must adhere. *See United States v. Koons*, No. 16-214-05, 2020 WL 1940570, at *4-5 (W.D. La. Apr. 21, 2020) (stressing that

"the rampant spread of the coronavirus and the conditions of confinement in jail, alone, are not sufficient grounds to justify a finding of extraordinary and compelling circumstances"). As the court observed in *Koons*, rejecting the notion that it has "carte blanche" authority to release whomever it chooses, "[t]he Court cannot release every prisoner at risk of contracting COVID-19 because the Court would then be obligated to release every prisoner." *Id.*

III.  Conclusion

Consistent with the foregoing analysis, Williams's motion (#100) is DENIED.

SIGNED at Beaumont, Texas, this 9th day of June, 2020.

_____
MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE